9 So.3d 707 (2009)
In the Interest of L.L-R., a child.
J.R., Appellant,
v.
Department of Children and Family Services and Guardian Ad Litem Program, Appellees.
No. 2D08-2554.
District Court of Appeal of Florida, Second District.
April 17, 2009.
*708 Linda A. Lorrier of Linda A. Lorrier, P.A., Bradenton, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Christopher Perone, Assistant Attorney General, Tampa, for Appellee Department of Children and Family Services.
Jennifer S. Paullin of Guardian ad Litem Program, Orlando, for Appellee Guardian ad Litem Program.
NORTHCUTT, Chief Judge.
J.R., the father of L.L-R., challenges the order terminating his parental rights.[1] The circuit court determined that he had abandoned the child. § 39.806(1)(b), Fla. Stat. (2006). The Department of Children and Family Services concedes that the evidence did not support the court's ruling. We agree and reverse.
L.L-R. was removed from her mother's custody in January 2007. The department filed a petition for dependency against both parents but listed J.R.'s whereabouts as "unknown." Subsequent reports listed the father's address as "Mexico" or stated that he "has not been located through diligent search." About a year after L.L-R. was taken into the department's custody, J.R. was finally located in a New Jersey prison. He will remain imprisoned for seven or eight more years. Evidence showed that he is a foreign citizen illegally in this country.
Once the department contacted J.R. and advised him of the proceedings, he wrote the case manager, sent one or two letters to the child, and drew pictures for her. The department never offered J.R. a case plan. Instead, less than two months after he contacted the agency, it proceeded with a petition to terminate his rights based on his abandonment of the child.
At some point, J.R. indicated that he would be willing to relinquish his rights and a telephone hearing was convened for that purpose in April 2008. The court questioned J.R. to determine whether his decision to relinquish his rights was voluntary. In the course of the colloquy, the judge explained that there was no guarantee that J.R. would be kept apprised of the child's well-being after his parental rights were terminated. At that point, J.R. stated that he didn't know what to do. The *709 judge wisely determined that J.R. had not voluntarily consented to the termination and proceeded to conduct a trial on the department's allegation of abandonment.
The 2006 version of section 39.01(1) defines abandonment as:
a situation in which the parent ..., while being able, makes no provision for the child's support and makes no effort to communicate with the child, which situation is sufficient to evince a willful rejection of parental obligations. If the efforts of the parent ... to support and communicate with the child are, in the opinion of the court, only marginal efforts that do not evince a settled purpose to assume all parental duties, the court may declare the child to be abandoned.
The statute also provides that "[t]he incarceration of a parent ... may support a finding of abandonment." But incarceration does not constitute abandonment as a matter of law. Rather, it is a factor that courts may consider when determining whether the child has been abandoned. T.H. v. Dep't of Children & Family Servs., 979 So.2d 1075, 1078 (Fla. 2d DCA 2008). "[T]he parent's efforts, or lack thereof, to assume parental duties while incarcerated must be considered in light of the limited opportunities to assume those duties while in prison." Id. at 1080 (citing Wirsing v. Dep't of Health & Rehabilitative Servs., 498 So.2d 946, 948 (Fla.1986)).
Under this standard, the department failed to present clear and convincing evidence that J.R. abandoned his child. The testimony at trial showed that J.R. communicated with his child as soon as the department informed him of the dependency proceeding. See Wirsing, 498 So.2d at 948 (noting that incarcerated parent's efforts to communicate with the child were not mere "lip service" and reversing trial court's finding of abandonment); L.N. v. Dep't of Children & Family Servs., 884 So.2d 291, 295 (Fla. 2d DCA 2004) (stating that the trial court overlooked the fact that the incarcerated mother communicated with her children to the fullest extent possible and that it improperly found she abandoned the children solely on the basis of her incarceration). J.R. was not given a case plan, and therefore he never had an opportunity to show that he intended to assume parental responsibilities during his incarceration. Accordingly, we reverse the order terminating J.R.'s rights.
The department also points out that the court did not consider the eleven factors used in determining whether the child's manifest best interest would be served by termination. See § 39.810. We appreciate the department's forthright concessions about the sufficiency of the evidence in this case. We note that if the department pursues termination of J.R.'s parental rights, the court must also thoroughly address the child's best interest.
Reversed and remanded.
ALTENBERND and LaROSE, JJ., Concur.
NOTES
[1] The mother's rights to the child were also terminated, but she has not appealed the court's ruling.